UNITED STATES DISTRICT COURT

EASTERN DISTRICT OF CALIFORNIA

----oo0oo----

| | |
|---|---|
| SHENETTA TONEY,<br><br>        Plaintiff,<br><br>   v.<br><br>NEIL YOUNG, BILL ATTERBERRY, and DOES 1 through 100,<br><br>        Defendants. | CIV. NO. 2:15-cv-1225 WBS AC<br><br>MEMORANDUM AND ORDER RE: MOTION FOR SUMMARY JUDGMENT |

----oo0oo----

Plaintiff Shenetta Toney brought this action against defendants Neil Young and Bill Atterberry, alleging that defendants violated her First Amendment rights by recommending that she be terminated from her position as a high school supervisor after she told students to video-record alleged police brutality during a school incident. (Compl. (Docket No. 1).) Defendants now move for summary judgment against plaintiff. (Defs.' Mot. (Docket No. 10).)

1

I.   Factual and Procedural History[1]

Plaintiff was employed as a "campus supervisor" at Bear Creek High School, a public high school, from 1999 to 2014. (See Decl. of Shenetta Toney ("Toney Decl.") ¶ 1 (Docket No. 20-3).) As a campus supervisor, plaintiff was responsible for: (1) "maintain[ing] order, safety and security" on campus; (2) "[p]revent[ing] student conflicts and fights"; and (3) "[r]espond[ing] to . . . calls of disturbance" and "interven[ing] as necessary" in such disturbances. (Pl.'s Opp'n Ex. 1, Campus Supervisor Job Description at 1 (Docket No. 20-6).)

On April 24, 2014, a "large" fight broke out in the parking lot of Bear Creek High shortly after the school day had ended. (Toney Decl. ¶ 4; Decl. of Bill Atterberry ("Atterberry Decl.") ¶ 6 (Docket No. 13).) Plaintiff, who was on duty at the time, was present at the scene of the fight. (Toney Decl. ¶ 4.) She testifies that she "was involved in trying to break up [the] fights." (Id.)

Because the fight involved "numerous students and numerous non-students," "[l]aw enforcement was summoned" to assist with the situation. (Atterberry Decl. ¶ 6.) Upon arrival, the police began to arrest a number of students. (See Toney Decl. ¶ 6; Pl.'s Opp'n Ex. 3, Incident Video (Docket No. 20-8).) At that time, plaintiff witnessed the police placing a female African-American student, E.T., under arrest and taking her "to the ground." (Toney Decl. ¶ 6.) Believing the force used in E.T.'s arrest to be excessive, plaintiff "yelled" that

---

[1] Unless expressly noted, the facts discussed in this Order are not disputed.

2

the arrest "was police brutality" and "bullshit," and told students "to get out their phones and record it." (Id.; Dep. of Shenetta Toney ("Toney Dep.") at 209-10 (Docket No. 20-10).) Some students then pulled out their cell phones and began to record the arrest. (Dep. of Don Tirapelle ("Tirapelle Dep.") at 58 (Docket No. 20-12).)

Plaintiff testifies that the fight "was pretty much under control" after she told students to take out their cell phones, so she "decided . . . to go home" shortly thereafter. (Toney Dep. at 211-12.)

After the fight, defendant Atterberry, Principal of Bear Creek High, commenced an investigation of the incident. (Atterberry Decl. ¶ 8.) Based on his investigation, Atterberry issued a letter of reprimand to plaintiff, accusing plaintiff of: (1) "[i]ncompetency . . . in performance of [her] duties" during the April 24 incident; (2) "discourteous, offensive, or abusive conduct or language toward the public, a pupil, or another officer or employee of the [school] District" during the incident; and (3) "[c]onduct . . . which negatively impact[ed] her] ability to render service to the [school] District." (Id. Ex. A, Letter of Reprimand at 2-3 (Docket No. 13-1).) Atterberry advised plaintiff that her behavior during the incident "will be referred to [the school district's] Personnel Department for disciplinary action, up to and including termination." (Id.)

Upon receiving Atterberry's letter, defendant Young, Director of Personnel for the school district, conducted a separate investigation of plaintiff's conduct. (Decl. of Neil Young ("Young Decl.") ¶ 8 (Docket No. 17).) Based on his

3

1  investigation, Young found that plaintiff's actions during the
2  incident "significantly escalated a precarious situation" and
3  "were in complete and total contravention of [her] duty" to
4  "maintain order and ensure the safety and security of District
5  students and staff."  (Id. Ex. A, Statement of Charges at 5
6  (Docket No. 17-1).)  Young also found "that [plaintiff] would
7  essentially act in the same manner again if the same situation
8  presented [itself]," (Young Decl. ¶ 15), as plaintiff informed
9  him during his investigation that her pointing out and telling
10 others to record police brutality "was the right thing to do,"
11 (Toney Decl. ¶ 11).  Based on these findings, Young recommended
12 that plaintiff be terminated from her position as campus
13 supervisor.  (See Statement of Charges at 5; Young Decl. ¶ 15.)
14       Plaintiff contested Young's recommendation before the
15 school district's Assistant Superintendent for Human Resources
16 (i.e., Skelly hearing) and at a hearing before the California
17 Office of Administrative Hearings.  (Atterberry Decl. ¶¶ 15-16.)
18 In both cases, the presiding authority affirmed Young's
19 recommendation.  (Id. ¶¶ 15, 17.)  The school district board
20 subsequently voted to terminate plaintiff's employment.  (Id. ¶
21 18.)
22       On June 8, 2015, plaintiff filed this action.  (Compl.)
23 In her Complaint, plaintiff alleges that defendants violated her
24 First Amendment[2] rights by "set[ting] in motion a series of

---

[2] Plaintiff also cites the Fourteenth Amendment in her Complaint.  (See Compl. ¶ 1.)  She makes no specific arguments with respect to the Fourteenth Amendment, however.  The court understands plaintiff's reference to the Fourteenth Amendment to be a reference to that Amendment's incorporation of the First Amendment to municipal entities.  (See id. ¶ 9 ("The Protected

4

events that [led] to [her] termination" because she engaged in "Protected Speech" during the April 24 incident.  (Id. ¶¶ 10-11, 23.)  Based on that allegation, plaintiff brings three claims against defendants under 42 U.S.C. § 1983 ("section 1983"): (1) a claim for damages against Young in his individual capacity; (2) a claim for damages against Atterberry in his individual capacity; and (3) a claim to expunge her letter of reprimand against Atterberry in his official capacity.  (Id. at 4-6.)  Defendants now move for summary judgment on each of plaintiff's claims.  (Defs.' Mot.)

II.   Legal Standard

     Summary judgment is proper "if the movant shows that there is no genuine dispute as to any material fact and the movant is entitled to judgment as a matter of law."  Fed. R. Civ. P. 56(a).  A material fact is one that could affect the outcome of the suit, and a genuine issue is one that could permit a reasonable jury to enter a verdict in the non-moving party's favor.  Anderson v. Liberty Lobby, Inc., 477 U.S. 242, 248 (1986).  The party moving for summary judgment bears the initial burden of establishing the absence of a genuine issue of material fact and can satisfy this burden by presenting evidence that negates an essential element of the non-moving party's case.  Celotex Corp. v. Catrett, 477 U.S. 317, 322-23 (1986).  Alternatively, the movant can demonstrate that the non-moving party cannot produce evidence to support an essential element upon which it will bear the burden of proof at trial.  Id.

---

Speech was protected under the First Amendment . . . as well as the Fourteenth Amendment to the United States Constitution.").)


Once the moving party meets its initial burden, the burden shifts to the non-moving party to "designate 'specific facts showing that there is a genuine issue for trial.'" Id. at 324 (quoting then-Fed. R. Civ. P. 56(e)). The non-moving party must "do more than simply show that there is some metaphysical doubt as to the material facts." Matsushita Elec. Indus. Co. v. Zenith Radio Corp., 475 U.S. 574, 586 (1986). "The mere existence of a scintilla of evidence . . . will be insufficient; there must be evidence on which the jury could reasonably find for the [non-moving party]." Anderson, 477 U.S. at 252.

In deciding a summary judgment motion, the court must view the evidence in the light most favorable to the non-moving party and draw all justifiable inferences in its favor. Id. at 255. "Credibility determinations, the weighing of the evidence, and the drawing of legitimate inferences from the facts are jury functions, not those of a judge . . . ruling on a motion for summary judgment . . . ." Id.

III. Discussion

"An analysis of the government's regulation of speech ordinarily hinges on the context, or forum, in which the speech takes place." Johnson v. Poway Unified Sch. Dist., 658 F.3d 954, 961 (9th Cir. 2011). Where "the government acts as both sovereign and employer," however, "this general forum-based analysis does not apply." Id. (citing Pickering v. Bd. of Ed. of Twp. High Sch. Dist. 205, 391 U.S. 563, 568 (1968) and Garcetti v. Ceballos, 547 U.S. 410, 417-19 (2006)). "Instead, the Court applies a distinct . . . analysis," set forth by the Supreme Court in Pickering v. Bd. of Ed. of Twp. High Sch. Dist. 205, 391

U.S. 563 (1968), "that 'reconciles the employee's right to engage in speech [with] the government employer's right to protect its own legitimate interests in performing its mission.'" Johnson, 658 F.3d at 961 (quoting City of San Diego v. Roe, 543 U.S. 77, 82 (2004)).

The issue presented in this case is whether defendants were constitutionally permitted to reprimand and recommend the termination of plaintiff for her speech during the April 24 incident.  Because defendants' decisions to reprimand and recommend the termination of plaintiff were made pursuant to their authority as school and district officials, (see Atterberry Decl. ¶¶ 3, 9; Young Decl. ¶¶ 4, 9), and thus plaintiff's employers, (see Toney Decl. ¶ 1 (plaintiff was employed by the school district)), the Pickering framework applies to this case. See Johnson, 658 F.3d at 954, 963-64 (applying Pickering framework to First Amendment claim brought by teacher against school principal and district officials in their individual and official capacities); see also Coomes v. Edmonds Sch. Dist. No. 15, 816 F.3d 1255, 1259-60 (9th Cir. 2016) (applying Pickering framework, as clarified in Eng v. Cooley, 552 F.3d 1062 (9th Cir. 2009), to First Amendment claim brought by teacher against school principal and assistant principal).

The Ninth Circuit clarified Pickering's framework in Eng v. Cooley, 552 F.3d 1062 (9th Cir. 2009).  Noting that "First Amendment retaliation law has evolved dramatically" in "the forty years since Pickering," the Ninth Circuit extracted from Pickering and subsequent related First Amendment cases "a sequential five-step" test.  Eng, 552 F.3d at 1070.  That test

("Eng test") asks: "(1) whether the plaintiff spoke on a matter of public concern"; "(2) whether the plaintiff spoke as a private citizen or public employee"; "(3) whether the plaintiff's protected speech was a substantial or motivating factor in the adverse employment action"; "(4) whether the state had an adequate justification for treating the employee differently from other members of the general public"; and "(5) whether the state would have taken the adverse employment action even absent the protected speech." Id.

The plaintiff bears the burden of satisfying steps one through three of Eng. Id. at 1070-71. "If the plaintiff has passed the first three steps, the burden shifts to the government to show that . . . [its] legitimate administrative interests outweigh the employee's First Amendment rights" (i.e., step four), or that "it would have reached the same adverse employment decision even in the absence of the employee's protected conduct" (i.e., step five). Id. at 1071-72 (internal citations omitted). Each step of Eng is "necessary" to a plaintiff's claim "in the sense that failure to meet any one of them is fatal to the plaintiff's case." Hagen v. City of Eugene, 736 F.3d 1251, 1257 (9th Cir. 2013) (internal citation omitted).

Eng step one asks "whether the plaintiff spoke on a matter of public concern." Eng, 552 F.3d at 1070. "Speech involves a matter of public concern when it can fairly be considered to relate to 'any matter of political, social, or other concern to the community.'" Johnson v. Multnomah Cty., Or., 48 F.3d 420, 421 (9th Cir. 1995) (quoting Connick v. Myers, 461 U.S. 138, 146 (1983)). "The public concern inquiry is purely

a question of law . . . ."  Eng, 552 F.3d at 1070 (citing Berry v. Dep't of Soc. Servs., 447 F.3d 642, 648 (9th Cir. 2006)).

Plaintiff's speech during the April 24 incident addressed the issue of police brutality.  There is ample case law support for the proposition that police brutality is a matter of public concern for Pickering purposes.  See, e.g., Dahlia v. Rodriguez, 735 F.3d 1060, 1067 (9th Cir. 2013) ("[R]eporting police abuse . . . is quintessentially a matter of public concern . . . ."); McLin v. Bd. of Police Comm'rs, 10 F. App'x 388, 389 (8th Cir. 2001) ("[Plaintiff's] comments addressing police brutality . . . were . . . a matter of public concern."); Zinnermon v. City of Chicago Dep't of Police, 209 F.Supp.2d 908, 910 (N.D. Ill. 2002) ("It is well settled that police brutality and misconduct are matters of public concern.").  Accordingly, the court finds that plaintiff has satisfied Eng step one.

Eng step two asks "whether the plaintiff spoke as a private citizen or public employee."  Eng, 552 F.3d at 1070. Speech made "in [one's] capacity as employee and not citizen" is "not protected because any restriction on that speech 'simply reflects the exercise of employer control over what the employer itself has commissioned.'"  Posey v. Lake Pend Oreille Sch. Dist. No. 84, 546 F.3d 1121, 1127 (9th Cir. 2008) (quoting Garcetti, 547 U.S. at 422); see also Garcetti, 547 F.3d at 421-22 (the First Amendment "does not invest [public employees] with a right to perform their jobs however they see fit"); Downs v. Los Angeles Unified Sch. Dist., 228 F.3d 1003, 1013 (9th Cir. 2000) ("Simply because the government opens its mouth to speak does not give every outside individual or group a First Amendment right to

play ventriloquist."). Thus, if the court finds that plaintiff "spoke as a public employee, not as a citizen," its "inquiry [under Eng] is at an end." Johnson, 658 F.3d at 966.

Whether plaintiff spoke as a private citizen or public employee is "a mixed question of fact and law." Id. (citing Posey, 546 F.3d at 1129). "While 'the question of the scope and content of a plaintiff's job responsibilities is a question of fact,' the 'ultimate constitutional significance of the facts as found' is a question of law." Eng, 552 F.3d at 1071 (quoting Posey, 546 F.3d at 1127 n.2).

It is undisputed that plaintiff's job as a campus supervisor entailed "patrolling the campus," "maintaining order [and] security," "communicat[ing] with students," "[p]revent[ing] student conflicts and fights," "[r]espond[ing] to . . . calls of disturbance," and "interven[ing] as necessary" in such disturbances. (Toney Decl. ¶ 2; Campus Supervisor Job Description at 1.) It is also undisputed that at the time of the April 24 incident, plaintiff was on duty. (See Pl.'s Resp. to Statement of Undisputed Facts ¶ 3 (Docket No. 20-1).) She had her radio with her, and testifies that she "was involved in trying to break up [the] fights" before the police arrived. (Toney Decl. ¶ 4.)

The Ninth Circuit held in Johnson v. Poway Unified Sch. Dist., 658 F.3d 954 (9th Cir. 2011) that "because of the position of trust and authority they hold and the impressionable young minds with which they interact, teachers necessarily act as teachers for purposes of a Pickering inquiry when at school or a school function, in the general presence of students, in a

capacity one might reasonably view as official." Johnson, 658 F.3d at 968; see also Tucker v. State of Cal. Dep't of Educ., 97 F.3d 1204, 1213 (9th Cir. 1996) (holding that school may "permissibly restrict" teacher's speech while teaching because a "teacher appears to speak for the state when he or she teaches" (emphasis added)); Peloza v. Capistrano Unified Sch. Dist., 37 F.3d 517, 522-23 (9th Cir. 1994) (holding that school may restrict teacher's speech when he is on campus and not teaching because "[t]he likelihood of high school students equating [a teacher's] views with those of the school" while he is on campus "is substantial").[3]

While plaintiff was not employed as a teacher at Bear Creek High, her role as a campus supervisor there was analogous to that of a teacher for Pickering purposes because like a teacher, she was placed in a "position of trust and authority" over students. (See Toney Decl. ¶ 2; Campus Supervisor Job Description at 1.) In fact, it can be said that her job as a campus supervisor even more directly included communicating with the students on the subjects involved in this case.

During the April 24 incident, plaintiff was at school and in the presence of students. (See Toney Decl. ¶ 4.) She was on duty, had her radio with her, and was engaged in carrying out

---

[3] While Johnson, Tucker, and Peloza each involved freedom of religion issues, their freedom of speech analyses are relevant here. See Johnson, 658 F.3d at 970 ("If the [speech] at issue in this case did not concern religion, our identification of the speech as the government's would end our inquiry."); id. at 967-68 (citing Tucker and Peloza in Pickering analysis); see also Coomes, 816 F.3d at 1260 (citing Johnson in resolving non-religious Pickering issue).

11

her responsibilities as a campus supervisor: "[r]espond[ing] to . . . [a] call[] of disturbance," "interven[ing]" in the disturbance, and "[p]revent[ing] [a] student . . . fight[]." (See id. ¶¶ 1, 4-5.) Moreover, she issued an order to students during the incident--"get out [your] phones and record" the police--something no private citizen would do. These facts indicate that plaintiff acted "in a capacity [students] might reasonably view as official" during the April 24 incident.

Plaintiff notes that defendants have not produced any affidavits from students indicating that they believed she was acting in her official capacity during the incident. The test under Johnson, however, is not whether students actually believed plaintiff was acting officially, but whether they "might reasonably view [her as acting] official[ly]." Johnson, 658 F.3d at 968 (emphasis added). As explained above, the undisputed facts in this case are sufficient to show that plaintiff acted "in a capacity [students] might reasonably view as official" during the April 24 incident.[4]

Because the undisputed facts show that plaintiff acted "in a capacity [students] might reasonably view as official" during the incident, Johnson counsels in favor of finding that plaintiff spoke as a public employee.

Plaintiff does not cite Johnson in her Opposition. She

---

[4] Even if the test were whether students actually believed plaintiff was acting in her official capacity, there is evidence indicating that students actually believed plaintiff spoke in her official capacity when she told them to take out their phones and record the police. (See Tirapelle Dep. at 58 (noting that "three or four phones" went up after plaintiff told students to "[g]et [their] phones out").)

12

cites Eng for the proposition that speech "not spoken pursuant to [one's] job duties" is "private" speech for Pickering purposes. (Id. (quoting Eng, 552 F.3d at 1075).)  She notes that both defendants concede in their depositions that her speech about recording alleged police brutality was not part of her job duties.  (See Pl.'s Opp'n at 27 (citing Dep. of Bill Atterberry ("Atterberry Dep.") at 17 (agreeing that "it [was not] part of [plaintiff's] job duties to tell students to take out their cell phones and videotape police") (Docket No. 20-11) and Dep. of Neil Young ("Young Dep.") at 23 (same) (Docket No. 20-14)) (Docket No. 20).)  Because her speech about recording alleged police brutality was not part of her job duties, plaintiff contends, it is "private" speech protected under the First Amendment, pursuant to Eng.

     The court disagrees with plaintiff's reading of Eng. While plaintiff's job description does not specifically state that she had a responsibility to instruct students to videotape alleged police brutality, it does state that she had a responsibility to "communicate with students," "intervene" in student conflicts, and "maintain [the] order [and] safety" of students.  (Campus Supervisor Job Description at 1.)  Her instruction to students "to get out their phones and record" alleged police brutality during the April 24 incident was an exercise of the authority that came with such responsibility. Private citizens do not have the authority to order other people's children to take action in situations of student conflict, as plaintiff did during the incident.

     In any event, the court need not decide, as a

13

dispositive matter, whether plaintiff spoke as a private citizen under Eng's formulation of the public-private speech test. Eng's formulation of the public-private speech test was addressed to the speech of a government employee who complained to other government officials and the media about alleged indiscretions at his workplace. See Eng, 552 F.3d at 1065, 1073. Because Eng did not address speech made by a public school instructor to students, its formulation of the public-private speech test need not apply here.[5]

With respect to speech made by a public school instructor to students, the Ninth Circuit held in Johnson that the relevant inquiry is whether the speech is made "in a capacity [students] might reasonably view as official." Johnson, 658 F.3d at 957; see also Tucker, 97 F.3d at 1213; Peloza, 37 F.3d at 522. Applying Johnson's formulation of the public-private speech test, the court finds that the undisputed facts in this case are sufficient to show that plaintiff spoke as a public employee during the April 24 incident. Because plaintiff spoke as a public employee during the incident, her speech during the incident is not protected under the First Amendment. Accordingly, plaintiff's claims, which each depend on a finding of a First Amendment violation, each fail at Eng step two, and defendants are entitled to judgment in this action.

---

[5] To the extent one might argue that it is inconsistent for the court to apply Eng's five-step test, but not its formulation of step two of that test, the court notes that the Ninth Circuit did exactly that in Johnson. See Johnson, 658 F.3d at 961, 968 (applying Eng's five-step test, but holding that the relevant inquiry at step two is whether speech is made "in a capacity [students] might reasonably view as official.").

14

IT IS THEREFORE ORDERED that defendants' Motion for summary judgment be, and the same hereby is, GRANTED.

The clerk is directed to enter judgment in favor of defendants and against plaintiff.

Dated:  February 28, 2017

WILLIAM B. SHUBB
UNITED STATES DISTRICT JUDGE